600 A.2d 851

**Jose Julio MORALES**

v.

**STATE of Maryland.**

**No. 40, Sept. Term, 1991.**

Court of Appeals of Maryland.

Jan. 29, 1992.

**332**

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

CHASANOW, Judge.

Jose Julio Morales was convicted of possession of cocaine with intent to distribute and conspiracy to distribute cocaine. He was sentenced to concurrent terms of imprisonment of twelve years and four years. On appeal, the Court of Special Appeals affirmed the convictions. *Morales v. State*, Unreported, No. 635, September Term, 1990, filed March 12, 1991. We granted certiorari to determine whether the trial court, McKee, J., erred in advising Morales, who was representing himself at trial, concerning his right to testify or not to testify, as well as the use of his prior convictions for impeachment purposes.

Morales waived his right to counsel despite the court's extensive warning about the dangers in proceeding pro se. The trial court urged Morales to obtain the assistance of an attorney, but Morales assured the judge that he had been to court before and wanted to represent himself. The trial judge went so far as to state "I have done everything, I have done everything except get on my knees and beg you to get a lawyer ... I am begging you to get a lawyer." Morales still insisted he did not want an attorney, and the

trial went forward with Morales representing himself. At the close of the State's case, the trial court advised Morales of his constitutional right to take the witness stand and testify in his own defense or not to testify and remain silent:

THE COURT: Now, is the time for you to put on your evidence. Call your first witness.

THE DEFENDANT: Just me.

THE COURT: Okay. So you will understand, evidence is only what a witness says from there or a physical thing that they—somebody on the witness stand describes and it's introduced like this was, or a stipulation and the stipulation is an agreement.

Now, you remember the State stipulated and they agreed that you didn't have money, drugs, or a beeper on your person when you were arrested. Isn't that what you stipulated to?

STATE'S ATTORNEY: Yes, Your Honor.

THE COURT: That is how evidence is taken in. Not what is said down there. What he says from down there is not evidence. What you say from down there is not evidence.

Do you want to take the witness stand and testify? You may. But I need to tell you that you have a right not to testify. Nobody in this country can be made to take the witness stand and testify against themselves. In fact, if they don't, the fact that they didn't, may not be held against them in any way. It may not be considered in any way. In other words, I can't assume, in my mind, that you are guilty just because you decided not to testify. Okay. It's your decision, but I don't want you to say that I better do it, because he is going to think that I am guilty if I don't do it. That won't be the case. I will just have to go on the evidence that I have heard but not the fact that he took the stand.

THE DEFENDANT: *I will take the stand.*

THE COURT: You want to take the stand? It is up to you. You thought about your right to remain silent, right?

THE DEFENDANT: *That is the only way for me to say what happened.*

THE COURT: That or to call witnesses.

THE DEFENDANT: I don't have any witnesses.

THE COURT: *I will give you time to think about this.* Whichever way you want to go. I don't know. I don't know if, for instance, *if you have ever been convicted of a crime before. And I don't want to know right now. But if you take the stand and testify and you have been convicted of a crime before, they may ask you, they meaning the State may ask you about that.* Not to prove that because you were guilty before that you are guilty now, but they may bring it up to show whether or not you should be believed or not. It goes to what they call veracity, believability.

Does that help you decide whether you should or shouldn't?

THE DEFENDANT: *I don't want to go up there.*

THE COURT: You don't want to go up there?

THE DEFENDANT: No.

THE COURT: You remember, I tried to tell you, I thought you ought to get a lawyer. I am trying to tell you, I am attempting to tell you—

THE DEFENDANT: I understand.

THE COURT: To do all the things as we move along. Okay. Do you want me to give you until one o'clock to come up with witnesses? I will do that for you.

THE DEFENDANT: No.

THE COURT: That wouldn't help you?

THE DEFENDANT: No. There is no one to call anyway. No.

THE COURT: Okay. Defense rests. (Emphasis added).

Morales' record, revealed at sentencing, consisted of convictions of assault and battery, possession of PCP, possession

of PCP with intent to distribute, theft, disorderly conduct, and numerous motor vehicle offenses.

The issue before this Court is whether the trial judge erred in the advice he gave Morales. The trial court informed the defendant, as required, that he had a right to testify or remain silent. We conclude, however, that while the trial court was not required to further inform Morales that he could be impeached by his prior convictions if he took the witness stand, since the trial judge elected to do so, he should have done so correctly. Because the judge may have misled Morales regarding impeachment by prior convictions and, thereby, influenced him not to testify, we must reverse.

 A trial court is required to inform an unrepresented defendant of the constitutional right to remain silent or to testify. The defendant's right to remain silent and refuse to testify in order to avoid the possibility of compelled self-incrimination is a fundamental constitutional right. U.S. Const.Amend. V. *See also Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (holding that the privilege against self-incrimination is made applicable to the states through the Fourteenth Amendment). Our State Constitution also grants a defendant in a criminal case the privilege against self-incrimination. Maryland Declaration of Rights, Article 22. No adverse inference can be drawn from the exercise of this privilege. Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 9–107; *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). An equally important corresponding constitutional right is the right of a defendant in a criminal case to testify in his or her own defense. *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

The decision whether or not to testify is a significant one and must be made with a basic appreciation of what the choice entails. If a defendant elects to remain silent, he or she waives the constitutional right to testify on his or her

own behalf. Conversely, if a defendant testifies, he or she waives the constitutional right to remain silent.

Defendants represented by counsel are presumed to have been informed of their constitutional rights by their attorneys. Therefore, the trial court is not required to advise represented defendants of their right to remain silent or testify. *Stevens v. State,* 232 Md. 33, 39, 192 A.2d 73, 77, *cert. denied,* 375 U.S. 886, 84 S.Ct. 160, 11 L.Ed.2d 115 (1963). When, however, it becomes clear to the trial court that a defendant "does not understand the significance of his election not to testify or the inferences to be drawn therefrom and where the presumption is rebutted," the court must advise a represented defendant of the right to testify or to remain silent. *Gilliam v. State,* 320 Md. 637, 652–53, 579 A.2d 744, 751 (1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991).

Unrepresented defendants can not be presumed to have been advised of, or know of, the existence of the constitutional right to remain silent or to testify in their own defense since they do not have attorneys to so inform them. Without knowledge of a right, a defendant can not waive it. Therefore, the trial court has an affirmative duty, albeit a limited one, to inform an unrepresented defendant of these rights. *Hamilton v. State,* 79 Md.App. 140, 149, 555 A.2d 1089, 1093, *cert. denied,* 316 Md. 550, 560 A.2d 1118 (1989); *Martin v. State,* 73 Md.App. 597, 602, 535 A.2d 951, 954 (1988).

In the instant case, the trial court advised Morales of his right to remain silent and explained that if he exercised this right no inference of guilt could be drawn from his refusal. In doing so, the trial court provided the defendant with sufficient information necessary to waive his constitutional right to testify or to refuse to testify.

The trial court, however, went further and told the defendant that if he decided to take the stand he would risk being impeached by the State with evidence of prior criminal convictions. The trial court was not required to inform

Morales of the possibility of impeachment. When a defendant in a criminal case knowingly and voluntarily elects to proceed without counsel and manage his or her own defense, he or she "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975). Counsel would presumably know of the defendant's prior criminal convictions and could advise the defendant whether these specific convictions could be used to impeach. It would be extremely difficult for the judge to give an unrepresented defendant a meaningful summary of the general law of impeachment by prior convictions and the trial judge should not be in a position of having to inquire about the defendant's prior convictions in order to give advice about potential impeachment. If the trial judge assumes the responsibility of giving such advice, the judge in effect becomes the defendant's lawyer. A defendant is not entitled to have the trial judge act as his or her attorney.

■ We are persuaded by the Court of Special Appeals' holding in *Martin v. State, supra,* that the trial court was not required to inform the unrepresented defendant that he could be impeached by the State on cross-examination. In *Martin,* the trial court told the defendant that he had the right to testify or refuse to testify and that it wouldn't be held against him if he elected to remain silent. The intermediate appellate court noted that this information sufficed and that the defendant should not expect the trial judge to advise him on the law of impeachment or to act as his lawyer. 73 Md.App. at 603, 535 A.2d at 954.

In *Hamilton v. State, supra,* the trial court assumed the responsibility of informing a defendant, represented by counsel, of his constitutional right to testify or to remain silent. During the colloquy it became clear that the defendant, who had very limited intellectual capacity, did not understand that no inference of guilt would be drawn from his failure to testify, and the trial judge did not allay the defendant's confusion. The Court of Special Appeals held

that the defendant's decision to testify was not made knowingly and intelligently. Although the trial judge could have relied on the presumption that since the defendant was represented by counsel he had been properly advised of his right to testify or refrain from testifying, once the judge had undertaken to make inquiry and give advice, the judge should have made certain that the defendant understood his rights. 79 Md.App. at 150–51, 555 A.2d at 1094.

Since in the instant case the trial judge elected to inform the unrepresented defendant of the possibility of impeachment by prior convictions, he should have done so correctly. A witness may be impeached by evidence of a prior conviction that tends to show that the witness may not be believed under oath. By statute, a witness may be impeached by prior convictions of "infamous crimes." Md. Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Art., § 10–905. "Infamous crimes" include treason, common law felonies, and other offenses classified as *crimen falsi*. *Horne v. State*, 321 Md. 547, 554, 583 A.2d 726, 729 (1991), *citing Prout v. State*, 311 Md. 348, 360, 535 A.2d 445, 449 (1988). Prior convictions of lesser crimes that bear on the witness' credibility may also be used to impeach a witness. *Prout v. State*, 311 Md. at 363, 535 A.2d at 452.[1]

In the instant case as revealed at sentencing, Morales' record consisted of convictions of assault and battery, possession of PCP, possession of PCP with intent to distribute, theft, disorderly conduct, and numerous motor vehicle offenses. We held in *State v. Duckett*, 306 Md. 503, 512,

---

1. Maryland Rule 1–502(a) became effective January 1, 1992 subsequent to the trial in the instant case. It provides in part:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

510 A.2d 253, 258 (1986) that a prior conviction of assault and battery is not admissible for impeachment purposes because it is irrelevant to the witness' credibility. *See also State v. Joynes,* 314 Md. 113, 549 A.2d 380 (1988). Similarly, the convictions for disorderly conduct, motor vehicle offenses, and possession of PCP are not relevant to credibility. These convictions would not be admissible for purposes of impeachment because they are not infamous crimes and do not bear on the witness' credibility. *See Lowery v. State,* 292 Md. 2, 437 A.2d 193 (1981); *Nesbit v. The Cumberland Contr. Co.,* 196 Md. 36, 75 A.2d 339 (1950); 6 Lynn McLain, *Maryland Evidence,* § 609.1 at 84 (1987). The felony of possession of PCP with intent to distribute is also not an infamous crime. We need not decide here whether a prior conviction for possession with intent to distribute a controlled dangerous substance may ever be used to impeach a witness, and if so, whether in the instant case the prejudice could outweigh the probative value. At least, Morales should not have been led to believe that conviction would be automatically admitted to impeach him. Theft, however, is a crime relevant to credibility and was the only one of Morales' convictions that was clearly admissible for impeachment purposes. *Horne v. State,* 321 Md. at 556, 583 A.2d at 730.

A reasonable inference from the quoted colloquy between the judge and Morales is that Morales intended to testify until the judge advised him to "think about this" and that his convictions could be brought out to show whether he should be believed or not. Since Morales apparently changed his decision to testify based on the trial court's incorrect implication that all of his prior convictions could be used to impeach him, the defendant's decision to waive his constitutional right to testify and to exercise his constitutional right to remain silent was not knowingly and intelligently made. If the trial court—although not required to do so—had given the correct information regarding impeachment by evidence of prior convictions, the result would be different. Therefore, we find that the trial court

erred, and we reverse the judgment of the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTIONS AND REMAND THIS CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.